T.C. Memo. 2009-269

UNITED STATES TAX COURT

VINCENT & GINA DEAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

VINCENT DEAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 20812-07L, 20943-07L.  Filed November 25, 2009.

<u>Ronald F. Hood</u>, for petitioners.

<u>Daniel P. Ryan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  This proceeding was commenced in response to
two Notices of Determination Concerning Collection Action(s)
Under Section 6320 and/or 6330.  The Internal Revenue Service
(IRS) sent a notice of determination to Vincent Dean (petitioner)

for his income tax liabilities for 2001, sustaining the proposed levy with respect to his unpaid taxes for 2001. The case at docket No. 20943-07L arises from a petition filed in response to the notice sent to petitioner for 2001. The IRS sent a separate notice of determination to Vincent and Gina Dean (petitioners) with respect to their outstanding joint income tax liabilities for 2002, 2003, and 2004, sustaining the proposed levy for the unpaid taxes for these years. The case at docket No. 20812-07L arises from a petition filed in response to this notice sent to petitioners. The cases were consolidated for trial, briefing, and opinion.

The issue for decision is whether the IRS Appeals Office abused its discretion by rejecting offers-in-compromise (OICs) made by petitioners and in determining that proposed levies on petitioners' property were appropriate.

Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

                          FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in St. Louis County, Minnesota, at the time the petitions were filed.

On April 3, 2006, the IRS sent petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, under section 6330 with respect to his Federal income taxes for 2001. Attached to the Letter 1058 was an account summary showing that petitioner's liability for 2001 consisted of an assessed balance of $53,008.19 plus interest of $2,135.89 and a late payment penalty of $1,254.44, for a total of $56,398.52.

On April 3, 2006, the IRS sent petitioners a Letter 1058 with respect to their Federal income taxes for 2002, 2003, and 2004. Attached to the Letter 1058 was an account summary showing that petitioners' liabilities were as follows:

| Year | Assessed Balance | Interest | Penalty | Total |
|------|------------------|----------|---------|-------|
| 2002 | $37,715.89 | $1,572.43 | $1,353.44 | $40,641.76 |
| 2003 | 27,318.16 | 1,138.92 | 1,045.22 | 29,502.30 |
| 2004 | 21,032.22 | 642.83 | 391.72 | 22,066.77 |

On May 3, 2006, the IRS received timely Forms 12153, Request for a Collection Due Process Hearing, from petitioners' attorney, Ronald Hood (Hood), in response to the Letters 1058--one for petitioner and one for petitioners. On the Forms 12153, petitioners did not challenge the underlying tax liabilities but stated their desire for OICs or installment agreements.

Petitioners' collection due process (CDP) hearings were assigned to the same settlement officer in the Appeals Office. On November 4, 2006, petitioners, through Hood, sent to the settlement officer one Form 656, Offer in Compromise, on the

basis of doubt as to collectibility regarding the outstanding tax liabilities for 2001-04. (The Form 656 also included tax years 2000 and 2005). With their OIC petitioners submitted financial information about themselves on Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and about petitioner's business on Form 433-B, Collection Information Statement for Businesses. In response to a phone conversation between the settlement officer and Hood, additional information regarding petitioner's business was submitted on November 16, 2006.

The settlement officer and Hood subsequently had several telephone conversations. In one of these telephone conversations, the settlement officer conveyed to Hood that the monthly housing and utilities expenses of $2,511 petitioners claimed on the Form 433-A exceeded the IRS Local Standard for Housing and Utilities which, for a family of five in St. Louis County, Minnesota, was a maximum of $1,115.

On December 23, 2006, Hood sent a letter to the settlement officer that she perceived as possibly threatening. She discussed it with her manager, who referred the letter to the IRS Office of Professional Responsibility.

In her research to verify the information petitioners provided on the submitted Form 433-A and determine the reasonable collection potential (RCP), the settlement officer concluded that

she needed clarification regarding the real property that petitioners owned. On their Form 433-A, petitioners listed two parcels of real property that they owned with a total current value of $250,500. However, the settlement officer's online research of the St. Louis County public records revealed additional parcels of real property listed in petitioners' names. Thus, on January 8, 2007, the settlement officer sent a letter to petitioners requesting that they provide information to her by January 31, 2007, regarding their real property.

On January 30, 2007, Hood sent a letter on petitioners' behalf to the settlement officer providing information regarding their real property ownership. Hood noted that "Some of the parcels * * * are in fact Contracts for Deed, in which either Vincent and/or Gina Dean are only the buyers/purchasers and these parcels are still owned by the seller." Petitioners submitted documentation regarding the real property that they owned through warranty deeds that had been included on Form 433-A. Petitioners also submitted the documents for two real property parcels showing that contracts for deed had been executed.

One contract for deed was executed August 9, 2001, for property described as "Lot 8, Block 2, Dorem, St. Louis County, Minnesota, except the Easterly 40 feet thereof" (parcel No. 317-0075-00160). The purchase price was $36,000, and there was an initial $10,000 downpayment. Another contract for deed was

executed May 17, 2002, for property described as "Lot 2, Block 1, Plat of Dorem" (parcel No. 317-0075-00020).  The purchase price was $75,000, and there was an initial $2,000 downpayment.  In the documents petitioners submitted to the settlement officer, they included information that identified the outstanding balances that remained on both contracts for deed:  $424.02 for parcel No. 317-0075-00160 and $68,335.29 for parcel No. 317-0075-00020.  The contracts for deed provided that the purchasers were to pay all real estate taxes and maintain liability insurance.

On April 4, 2007, the settlement officer sent petitioners a letter summarizing her analysis of their financial information for the purpose of calculating the RCP and stated that the "figures listed were calculated using the information received as of 4/3/2007 and the information is provided to allow you to discuss collection alternatives in resolving your outstanding personal income tax liabilities."

In her analysis, the settlement officer prepared an asset equity table that included the two parcels with the contracts for deed/dissipated assets and noted:

> The taxpayers entered into contracts for deed for Parcel # 317-0075-00020 and Parcel # 317-0075-00160 in Ely [sic] County, MN.  Since they entered into these contracts, the taxpayers paid $42,340.69 towards the contracts that could have been paid towards their outstanding income tax liabilities for the years 2000 through 2005 inclusive.

In calculating the RCP, the settlement officer used the amounts petitioners had paid, not the assessed values of the land.

Additionally, using information petitioners provided, the settlement officer identified the actual monthly housing and utilities expenses as $2,364 consisting of: A monthly mortgage payment of $1,753, which included taxes and insurance; average monthly electricity expense of $384; telephone expense of $103; trash collection of $69; and $55 for DirectTV. The settlement officer further explained the housing and utilities expenses she allowed according to the IRS local standards:

> Maximum allowable amount for a family of 5 in St. Louis County, MN is $1,115. I allowed $300 more a month than the allowable amount due to the fact that there are 5 living in the house and the electricity and water bills may be higher due to their being a family of 5.
>
> They have presented no special circumstances, such as the need for handicapped accessible housing, as to why the $2,511 in actual amount of housing expenses, which are $1,249 over the allowable amount, should be allowed, other than that the amounts listed are what they are actually paying to meet their basic living expenses.

Based on the information received from petitioners, the inclusion of the properties with executed contracts for deed, and the use of the local standard for housing with her $300 addition, the settlement officer calculated the RCP to be $137,308 (if the offered amount were to be paid in 5 months or less, or $147,124 if the offered amount were to be paid in more than 5 months but less than 60 months). In her letter, the settlement officer gave

petitioners until May 3, 2007, to submit an acceptable collection alternative and noted that failure to do so would result in the issuance of the notices of determination.

On May 2, 2007, Hood sent a letter to the settlement officer on petitioners' behalf with a proposed OIC. In this OIC submitted for years 2000 through 2006, petitioners offered to pay $102,350. In the OIC, petitioners stated:

> We disagree with the IRS analysis regarding the allowances for housing and utilities, transportation and the issue of dissipated assets. As a consequence of our disagreement on these issues, our offer of $102,350.00 is less than the IRS's reasonable collection potential (RCP) amount of which we disagree. * * *

On May 7, 2007, the settlement officer sent a letter to petitioners informing them that they needed to submit two OICs-- one in petitioner's name for 2000 and 2001 and a second in petitioners' names for 2002, 2003, 2004, and 2005. On May 29, 2007, petitioners submitted two OICs, both based on doubt as to collectibility. In the OIC submitted for his 2000 and 2001 income tax liabilities, petitioner offered to pay $33,775, to be paid over 115 months in monthly payments of $294. In the OIC submitted for their 2002, 2003, 2004, and 2005 income tax liabilities, petitioners offered to pay $68,575, to be paid over 115 months in monthly payments of $596. The offered amounts were less than the RCP as calculated by the settlement officer, and in both OICs it was noted that there was disagreement with the

settlement officer's analysis regarding the allowance for housing and utilities, the allowance for transportation expenses, and the issue of dissipated assets.

On August 14, 2007, the IRS sent two separate Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. The notices of determination were both signed by the same Appeals team manager and each contained a "Summary of Determination" stating:

> Based on the information in the case file, the Notice of Intent to Levy was appropriate at the time it was issued. No acceptable collection alternatives could be agreed to. Collection action would be appropriate to collect this debt. This analysis indicates that this action is now necessary to provide for the efficient collection of the taxes despite the potential intrusiveness of enforced collection.

Petitions were timely filed with the Court in response to the notices.

At trial respondent's counsel objected to petitioner's testimony as outside the administrative record, arguing that petitioner's testimony would not add to or explain anything regarding the administrative record or the CDP hearing because petitioner had counsel--and did not participate himself--in the CDP hearing. The Court reserved ruling on this objection.

OPINION

Section 6330 provides for notice and opportunity for a hearing before the IRS may levy upon the property of any person. Under section 6330(c)(3), the determination to proceed with a

collection action "shall take into consideration * * * whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."

This Court has jurisdiction to review the collection activities of the Commissioner only with respect to tax liabilities for which a valid notice of determination has been issued. Sec. 6330(d)(1). Valid notices of determination were issued as to collection of petitioner's income tax liability for 2001 and petitioners' income tax liabilities for 2002, 2003, and 2004, and petitions were filed identifying those years. However, the OICs submitted to the IRS included proposed compromises for years not subjects of the notices of determination.

The Court lacks jurisdiction to review collection of the liabilities for the years not included in the notices of determination. See Sullivan v. Commissioner, T.C. Memo. 2009-4. In determining whether the rejection of the OICs and the collection of the years included in the notices of determination is appropriate, this Court is authorized (as the settlement officer was required) to consider "any relevant issue relating to * * * the proposed levy". Sec. 6330(c)(2)(A), (d). Therefore, we evaluate the settlement officer's exercise of discretion in rejecting the OICs, taking into account all the liabilities that

were proposed to be compromised, even though we do not have jurisdiction to review the collection of all those liabilities. See, e.g., Orum v. Commissioner, 123 T.C. 1 (2004) (reviewing an OIC that covers income tax liabilities for tax years that are both within and outside of this Court's jurisdiction), affd. 412 F.3d 819 (7th Cir. 2005).

Petitioners have not challenged their underlying liabilities. Accordingly, we review the Appeals Office's determination for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000). An action constitutes an abuse of discretion if it is arbitrary, capricious, or without sound basis in fact or law. Giamelli v. Commissioner, 129 T.C. 107, 111 (2007).

The parties agree that these cases are appealable to the Court of Appeals for the Eighth Circuit. That court has held that judicial review of nonliability issues under section 6330(d) is limited to the administrative record, subject to exceptions that are not applicable here. Robinette v. Commissioner, 439 F.3d 455, 461-462 (8th Cir. 2006), revg. 123 T.C. 85 (2004); see also Fifty Below Sales & Mktg., Inc. v. United States, 497 F.3d 828, 829-830 (8th Cir. 2007) (concluding that the review of a CDP decision rendered by an Appeals officer under section 6330 is limited to the administrative record before the Appeals officer). See generally Murphy v. Commissioner, 469 F.3d 27, 31 (1st Cir.

2006) (listing exceptions to administrative record rule), affg. 125 T.C. 301 (2005).  The administrative record consists of the case file, including the taxpayer's written request for a hearing, written communications or information submitted in connection with the CDP hearing, IRS notes of any oral communications with the taxpayer, IRS memoranda in connection with the hearing, and any other documents or materials used by the IRS Appeals officer or employee in making a determination under section 6330(c)(3).  See Robinette v. Commissioner, supra at 461-462.

Respondent asserts that petitioner's testimony should be disregarded because it is outside the administrative record. Petitioner's attorney--not petitioner--participated in the CDP hearing.  Thus, petitioner's testimony is not relevant in determining whether the Appeals Office's refusal to accept the OICs was arbitrary, capricious, or without sound basis in law or fact.  See Murphy v. Commissioner, supra at 31; Robinette v. Commissioner, supra at 461.  Therefore, we sustain respondent's objection regarding the consideration of petitioner's testimony.

Section 7122(a) authorizes compromise of a taxpayer's Federal income tax liability.  The grounds for compromise of a tax liability include doubt as to collectibility.  Sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  Petitioners based both of their most recently submitted OICs on doubt as to collectibility, which

"exists in any case where the taxpayer's assets and income are less than the full amount of the liability." Id. Generally, under the Commissioner's administrative guidelines, an offer to compromise based on doubt as to collectibility will be acceptable only if it reflects the RCP. See Internal Revenue Manual (IRM), pt. 5.8.1.1.3(3) (Sept. 1, 2005); see also Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517 (stating that an offer will be considered acceptable if it reflects the taxpayer's RCP). Where the Appeals officer has followed the IRS guidelines to ascertain a taxpayer's RCP and has rejected the taxpayer's collection alternative on that basis, we generally have found no abuse of discretion. See McClanahan v. Commissioner, T.C. Memo. 2008-161; Lemann v. Commissioner, T.C. Memo. 2006-37.

Petitioners contend that in determining the RCP, the settlement officer reached an unrealistic result by: (1) Using the local standard allowance for monthly housing and utilities expenses and (2) including the contracts for deed, because petitioners claim these were not property that petitioners "owned".

Although petitioners stated on their Forms 656 that they also disagreed with the transportation expense allowance, they did not raise this issue in their petition or at trial. A petition for review of a collection action must clearly specify the errors alleged to have been committed in the notice of

determination, and any issues not raised in the assignments of error are deemed conceded by the taxpayer.  Rule 331(b)(4); see Goza v. Commissioner, 114 T.C. 176, 183 (2000).  The transportation expense allowance issue is deemed conceded.

Local Standard Allowance for Housing and Utilities Expenses

Respondent asserts that

Petitioners erroneously argue that the issue in this case is whether the local standards for housing and utilities accurately reflect the costs for a family to reside in St. Louis County, Minnesota.  Instead, the issue to be decided by the Court is whether * * * [the settlement officer] abused her discretion in applying the local standards for housing and utilities rather than petitioners' claimed expenses in determining an acceptable OIC amount.

Petitioners' disagreement is, in essence, with the settlement officer's use of the local standards for housing and utilities expenses as published by the IRS for St. Louis County, Minnesota.  Petitioners do not contend that the settlement officer misapplied these standard allowances.  They challenge the legitimacy of the IRS prescribed county-by-county standard allowances and argue that the IRS guidelines are "clearly" arbitrary on their face and do not follow the congressional mandate of section 7122 because counties in the United States vary in size and population and it would be more equitable for the local standards to be issued on a city and town level.

In 1998 Congress directed the Secretary to prescribe guidelines for calculating allowable living expenses when

determining the taxpayer's current financial condition and ability to pay delinquent taxes. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3462, 112 Stat. 764; sec. 7122(d) (enacted as sec. 7122(c)). The Secretary was also directed to "develop and publish schedules of national and local allowances designed to provide that taxpayers entering into a compromise have an adequate means to provide for basic living expenses." Sec. 7122(d)(2)(A). The IRS has thus developed collection financial standards that include national standards for general living expenses and local standards for housing, utilities, and transportation. Local standards for housing are established for each county within a state. See IRM pt. 5.15.1.7 (May 1, 2004).

Petitioners argue that the use of local standards is a violation of their "fundamental rights of procedural due process" and that respondent should have been required to present expert testimony about the manner in which the standards were developed. Petitioners' rights to a precollection hearing and to compromise their undisputed tax liability are privileges created by Congress, subject to conditions established by Congress. They have no constitutional right to avoid payment of their admitted tax liabilities and, absent the 1998 legislation, had no rights to precollection procedures. Their attempt to raise the dispute to constitutional levels is unpersuasive.

When section 7122 was amended in 2006 to add provisions governing the submission and evaluation of OICs, Congress did not question the promulgated local standards, thus lending support to the IRS local standards as developed and in use at that time. See Tax Increase Prevention and Reconciliation Act of 2005, Pub. L. 109-222, sec. 509(a), (b), (d), 120 Stat. 362-364 (2006). Congress also signaled its support for the IRS standards as developed by referring to "amounts specified under the National Standards and Local Standards" in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, sec. 102, 119 Stat. 27, and used to determine allowable living expenses of above-median income debtors. See 11 U.S.C. secs. 707(b)(2)(A), 1325(b) (2006). Petitioners' argument that the local standards should not be determined on a county level is not persuasive in the light of the actions of Congress.

This Court has sustained use of the IRS published national and local allowances as guidelines for basic monthly living expenses in evaluating the adequacy of proposed installment agreements and OICs. See, e.g., Speltz v. Commissioner, 124 T.C. 165, 179 (2005), affd. 454 F.3d 782 (8th Cir. 2006); Fernandez v. Commissioner, T.C. Memo. 2008-210 (no abuse of discretion found when the taxpayer argued that the local standard allowance for monthly housing and utilities expenses would make it "almost impossible to own a family size house" in South Florida).

Generally, this Court has found no abuse of discretion where Appeals officers used the housing and utilities standard allowances rather than the taxpayer's actual expenses. See <u>Marks v. Commissioner</u>, T.C. Memo. 2008-226; <u>Diffee v. Commissioner</u>, T.C. Memo. 2007-304; cf. <u>Fowler v. Commissioner</u>, T.C. Memo. 2004-163 (holding that an Appeals officer abused his discretion in determining, on the basis of the standard allowance guidelines, that the taxpayer could not live as cheaply as they had claimed and so could not afford their proposed installment payments).

Petitioners identified their actual monthly housing and utilities expenses as $2,511. The settlement officer applied the published local standards for housing and utilities expenses of $1,115 for St. Louis County, Minnesota and added $300 because of the size of petitioners' family, resulting in a total monthly allowance of $1,415.

Petitioners contend that the settlement officer should have conducted research to show the availability of less expensive housing in St. Louis County for petitioners, presented an analysis showing the costs for petitioners to move, and performed research on the tax consequences of such a move. The taxpayer has the burden to submit information to Appeals to justify a departure from the local standards. See <u>Lindley v. Commissioner</u>, T.C. Memo. 2006-229 (no abuse of discretion to use local standards when taxpayer does not make showing that he will be

unable to provide for basic living expenses), affd. sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009). No evidence concerning the alleged cost of moving to a new residence was presented during the CDP hearing, and it was not the burden of the settlement officer to secure evidence supporting petitioners' position.

Petitioners have not shown that the settlement officer did not properly apply the provisions of the Code, the regulations, or the IRM with respect to the local standard allowance for monthly housing and utilities expenses. There was, therefore, no abuse of discretion in regard to that element of the determination.

Dissipated Assets

Where a taxpayer has dissipated assets in disregard of the taxpayer's outstanding Federal income taxes, the dissipated assets may be included in the calculation of the minimum amount that is to be paid under an acceptable OIC. See IRM pt. 5.8.5.4(5) (Sept. 1, 2005). A dissipated asset is defined as any asset (liquid or not liquid) that has been sold, transferred, or spent on nonpriority items and/or debts and is no longer available to pay the tax liability. See Samuel v. Commissioner, T.C. Memo. 2007-312; IRM pt. 5.8.5.4(1) (Sept. 1, 2005).

Petitioners assert that they have no equity in two parcels of real property in Minnesota for which they entered contracts

for deed.  In a letter dated January 30, 2007, sent to the settlement officer on petitioners' behalf, Hood stated that the parcels were not listed on their Form 433-A because petitioners were required to list all real estate that they "own".  Thus, petitioners contend that the settlement officer erred by including those two properties to calculate the RCP.

The settlement officer included the amounts petitioners had already paid on the contracts for deed when calculating the RCP, not the assessed value of the real properties.  The purchase price of parcel No. 317-0075-00160 was $36,000, and an outstanding balance of $424.02 remained; thus, the settlement officer determined petitioners had paid $35,575.98.  The purchase price of parcel No. 317-0075-00020 was $75,000, and an outstanding balance of $68,335.29 remained; thus, the settlement officer determined petitioners had paid $6,664.71.  When these amounts were paid, petitioner had outstanding tax liabilities going back to 2000.  Petitioners have offered no evidence contradicting the reasonable assumptions of the settlement officer.

We conclude that it was not an abuse of discretion for the settlement officer to include the amounts petitioners had paid on the parcels of real property with executed contracts for deed when calculating the RCP.  We need not address the arguments of the parties about whether petitioners had an equity interest in

the parcels because the settlement officer included only the amounts paid and not the assessed values of the parcels.

Appeals Office Impartiality Requirement

Finally, petitioners argue that the CDP hearing failed to satisfy the impartiality requirements under section 6330(b)(3). Petitioners base their argument on the referral to the IRS Office of Professional Responsibility of a letter written by Hood to the settlement officer. The letter was intemperate and was reasonably perceived as possibly threatening. We are unpersuaded that the referral was an inappropriate or excessive response or that the ultimate determination to reject petitioners' OICs was affected by counsel's letter or the referral based on it.

For purposes of section 6330(b)(3), an "impartial" officer is one "who has had no prior involvement with respect to the unpaid tax specified in subsection (a)(3)(A) before the first hearing under this section or section 6320." See Perez v. Commissioner, T.C. Memo. 2002-274. Petitioners have presented no evidence that either the settlement officer or the Appeals team manager was involved in their cases before the first hearing under section 6330. We conclude that the section 6330(b)(3) impartiality requirement was satisfied.

Ultimately, the issue in this proceeding is whether there was an abuse of discretion when the Appeals Office refused petitioners' requested collection alternatives and subsequently

determined that the proposed levy should proceed.  The settlement officer followed applicable procedures in considering petitioners' request for a collection alternative, and rejection of the OICs was not arbitrary, capricious, or without sound basis.  Further, the Appeals team manager did not act in an arbitrary or capricious way, or in an unlawful or unreasonable manner, in sustaining respondent's proposed collection action and, accordingly, did not abuse his discretion.  In sum, we conclude that there was no abuse of discretion by the Appeals Office in rejecting the OICs and in sustaining the levy.

In reaching our decisions, we have considered all arguments made by the parties.  To the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered for respondent</u>.