T.C. Memo. 2013-135

UNITED STATES TAX COURT

ANTONIO LEPORE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11698-11L.                    Filed May 30, 2013.

Matthew J. McBride, for petitioner.

Alexandra E. Nicholaides and Alissa L. VanderKooi, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  This case is before the Court to review the 2011
determination by the IRS's Appeals Office to sustain the filing of a notice of
federal tax lien against the property of the petitioner, Antonio Lepore.  The IRS
filed the notice of lien to collect assessed trust fund recovery penalties for the 11

**[*2]** calendar quarters from the third quarter of 2001 through the first quarter of 2004. We review the determination of the Appeals Office pursuant to sections 6320(c) and 6330(d)(1).[1]

Lepore contends that the Appeals Office erred because it did not permit him to contest his liability for the trust fund recovery penalties on which the assessments are based. A person who has received a Letter 1153 from the IRS has already had an opportunity to contest trust fund recovery penalties, Pough v. Commissioner, 135 T.C. 344, 349 (2010), and is barred from contesting the liabilities before the Appeals Office in the context of its determination to sustain the filing of a notice of federal tax lien, see sec. 6330(c)(2)(B). The issue to be decided is whether Lepore received the Letter 1153 that the IRS sent him in 2007. We hold that he did not receive the letter.

FINDINGS OF FACT

Lepore resided in Michigan when the petition was filed.

On or about March 30, 2007, IRS Revenue Officer Antoinette Cooley sent a Letter 1153 advising Lepore of a proposed trust fund recovery penalty assessment under section 6672 for failure to collect and pay over employment taxes with

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended.

[*3] respect to employees of TBD Group LLC for the 14 calendar quarters from the third quarter of 2001 through the fourth quarter of 2004. The letter gave Lepore 60 days to appeal the proposed assessment. It was mailed by certified mail to Lepore's home address in Troy, Michigan. On April 3, 2007, it was received and signed for at the house by Lepore's 23-year-old son. Lepore himself never saw the letter and was not aware of its arrival.

Lepore did not appeal the proposed assessment. The IRS assessed the penalties for the 11 calendar quarters from the third quarter of 2001 through the first quarter of 2004. The record does not reveal whether the IRS assessed penalties for the other three quarters referenced in the Letter 1153.

On November 30, 2010, the IRS sent Lepore a notice of federal tax lien filing with respect to the assessed penalties for the 11 calendar quarters from the third quarter of 2001 through the first quarter of 2004. In response, Lepore made a timely request for a collection-review hearing. In his request he gave the following explanation for his disagreement with the federal tax lien filing: "I do not feel responsible for this. It was not my job--and I cannot pay this." On April 11, 2011, the Appeals Office conducted a telephone hearing with Lepore. On April 19, 2011, the Appeals Office mailed Lepore a notice of determination sustaining the notice of federal tax lien filing. The notice of determination stated

**[*4]** that all legal and procedural requirements had been followed, that the issues Lepore had raised could not be considered, and that the lien filing balanced the need for efficient collection of taxes with concerns regarding the intrusiveness of the filing. In the part of the notice headed "Relevant Issued [sic] by the Taxpayer", the notice of determination stated that during the telephone hearing: (1) the Appeals Office had confirmed with Lepore that his son signed for the Letter 1153 and (2) the Appeals Office had informed Lepore that the letter had been his opportunity to challenge his liability for the trust fund recovery penalties and that the Appeals Office would not consider his challenge to the liabilities. In the same part, the notice of determination also stated that during the telephone hearing: (1) Lepore claimed that he could not pay the trust fund recovery penalties, (2) the Appeals Office responded by asking him to provide financial documentation showing his current financial condition, but (3) he had declined to do so.

On May 17, 2011, Lepore filed a petition with this Court challenging the determination of the Appeals Office. The Court held a trial in Detroit, Michigan, on the issue of whether Lepore had a prior opportunity to contest his liability for

**[\*5]** the assessed trust fund recovery penalties for the 11 calendar quarters from the third quarter of 2001 through the first quarter of 2004.[2]

OPINION

1.    The Parties' Arguments

Lepore testified that he neither saw the Letter 1153 nor knew that it had been delivered to his house.  He argues that under these circumstances he did not receive the letter.  The IRS argues that Lepore's testimony is not believable.  The IRS also argues that receipt of a Letter 1153 by a competent person at the last known address of the person to whom the letter is addressed constitutes receipt by the addressee and that therefore receipt of the Letter 1153 by Lepore's son constitutes receipt by Lepore himself.

2.    Applicable Law

a.    The Section 6672 Penalty:  Need for Preliminary Notice

Section 6672 imposes a penalty for the willful failure to collect, account for, and pay over income and employment taxes of employees.  Mason v. Commissioner, 132 T.C. 301, 321 (2009).  The penalty is referred to as the "trust fund recovery penalty."  Weber v. Commissioner, 138 T.C. 348, 357 (2012).

---

[2]The trial was a partial trial.  It concerned only one of the issues in the case.

**[*6]** Before the IRS may assess a trust fund recovery penalty, it must mail a preliminary notice (here, the Letter 1153) "to an address as determined under section 6212(b)", i.e., to the person's last known address (or deliver the notice in person), advising of the proposed assessment of a trust fund recovery penalty.[3] Sec. 6672(b)(1); see Mason v. Commissioner, 132 T.C. at 322-323.  The statute allows the IRS to choose between notification by mail to the person's last known address and in-person delivery.  Mason v. Commissioner, 132 T.C. at 322-323. Thus, if the IRS mails the notification to the person's last known address, the notification requirement is satisfied even if the person did not actually receive the notice.  Id.  During the 60-day period after the date of the Letter 1153, the person may appeal the proposed assessment and request a conference with the Appeals Office.  See Rev. Proc. 2005-34, 2005-1 C.B. 1233, 1234-1235.  If the person does appeal, the limitations period on assessment of the penalty will not expire until 30 days after the IRS's final determination regarding the appeal.  Sec. 6672(b)(3)(B).

 b. <u>Collection Procedure</u>

 Section 6321 imposes a lien for unpaid federal taxes, including the trust fund recovery penalty.  See Conway v. Commissioner, 137 T.C. 209, 214-215

---

[3]An exception is made if the IRS determines that collection of the penalty is in jeopardy.  Sec. 6672(b)(4).

**[*7]** (2011).  The federal tax lien arises when an assessment is made.  Sec. 6322.

Section 6323 provides that the lien imposed by section 6321 is not valid against

certain persons until notice of the lien is filed.

Section 6320(a) provides that, after the IRS has filed the required notice, the

IRS must notify the taxpayer of the filing and of the taxpayer's right to request a

collection-review hearing.  Under section 6320(a)(3)(B), a 30-day period is

provided during which the taxpayer may request the collection-review hearing.  If

the taxpayer timely requests a collection-review hearing, the collection-review

hearing is to be conducted by the Appeals Office, and the Appeals officer

conducting it must verify that the requirements of any applicable law or

administrative procedure have been met.  Secs. 6230(b)(1), (c), 6330(c)(1).

Section 6330(c)(2)(A) provides that the taxpayer requesting the collection-

review hearing may raise "any relevant issue" relating to the unpaid tax or the

IRS's collection action.  Section 6330(c)(2)(B) provides that the taxpayer "may

also raise at the hearing challenges to the existence or amount of the underlying

tax liability" if the taxpayer did not receive any statutory notice of deficiency for

such liability, or did not otherwise have an opportunity to dispute it.

Following the collection-review hearing, the Appeals officer must

determine whether the collection action is to proceed, taking into account the

**[*8]** verifications the Appeals officer has made, the issues raised by the taxpayer at the collection-review hearing, and whether the collection action "balances the need for the efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3)(C).  We have jurisdiction to review such determinations.  Sec. 6330(d)(1).  Where the underlying tax liability is properly at issue, the taxpayer is entitled to a de novo hearing in this Court.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the underlying tax liability is not properly at issue, we review the determination for abuse of discretion.  Id. at 182.

The determination by the Appeals Office was based on the legal conclusion that receipt of the Letter 1153 by Lepore's son constituted receipt by Lepore.  The standard of review is irrelevant when reviewing a conclusion of law, since whether our review is characterized as review for the abuse of discretion or "de novo" review, we must reject erroneous views of the law.  See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990); United States v. Vasilakos, 508 F.3d 401, 409 (6th Cir. 2007); United States v. McDaniel, 398 F.3d 540, 544 (6th Cir. 2005); Abrams v. Interco, Inc., 719 F.2d 23, 28 (2d Cir. 1983) (stating that it is not inconsistent with the abuse of discretion standard to decline to honor a purported exercise of discretion that is infected by an error of law); Kendricks v.

**[\*9]** <u>Commissioner</u>, 124 T.C. 69, 75 (2005); <u>Swanson v. Commissioner</u>, 121 T.C. 111, 119 (2003). As for the IRS's argument that Lepore actually received the letter personally, we accord no deference to this view of the facts because there is no evidence that such a view was relied on or held by the Appeals Office.[4]

3.      <u>Analysis</u>[5]

Section 6330(c)(2)(B) provides that a taxpayer cannot challenge an underlying liability in a collection-review hearing, and therefore this Court cannot review that liability, if the taxpayer received a notice of deficiency or otherwise had an opportunity to dispute the underlying liability. Because the assessments against Lepore were trust fund recovery penalties, the IRS would not have issued and mailed a notice of deficiency. Sec. 6212(a). The question is whether Lepore "otherwise * * * [had] an opportunity to dispute" the trust fund recovery penalty assessments. <u>See</u> sec. 6330(c)(2)(B). Actual receipt of the Letter 1153 (which advises the taxpayer of the right to appeal the proposed assessment and request an

_____

[4]Indeed, it may be questioned whether it is permissible to even entertain a factual view that was not adopted by the Appeals Office, the actions of which we are reviewing. <u>See</u> <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 93-95 (1943). Lepore did not raise this question.

[5]Neither party has raised any question concerning the burden of proof or burden of production in this case. <u>See</u> sec. 7491. Our findings are supported by the preponderance of the evidence. <u>See</u> <u>Martin Ice Cream Co. v. Commissioner</u>, 110 T.C. 189, 210 n.16 (1998).

**[\*10]** Appeals conference), unless avoided by the taxpayer's deliberate refusal to receive the letter, is generally required if that letter is to be considered as having provided a prior opportunity to dispute the underlying section 6672 liability. Mason v. Commissioner, 132 T.C. at 318.

Lepore testified that he never saw the Letter 1153 or knew that it had arrived at his home. The IRS contends that we should not believe Lepore's testimony because he is untrustworthy. As evidence of Lepore's untrustworthiness, the IRS contends that Lepore falsely testified that he was current with his own tax obligations even though he had not filed his 2008 and 2009 federal income tax returns on time. We believe that Lepore did not mean to say he was current with his tax obligations when he testified in May 2012. He meant that he had been current with his tax obligations as of April 2007, which is when the Letter 1153 had been sent. This claim is not belied by his failure to timely file his 2008 and 2009 federal income tax returns. We believe Lepore's testimony about the Letter 1153 for several reasons. First, Lepore credibly testified that he always responded to correspondence from the IRS (a point not disputed by the IRS) and that he would have responded to the Letter 1153 had he known about it. See id. at 318-319. Second, Lepore's son credibly testified that he did not give the Letter 1153 to his father personally and that he instead "threw"

**[*11]** the Letter 1153 "somewhere" in the basement. Third, the basement was a multipurpose office space containing Lepore's desk, a desk for Lepore's other son (who had moved out of the house a year earlier but still used the basement for office work), and the files of at least three defunct businesses formerly owned or managed by Lepore or by Lepore's other son. A letter thrown in the basement therefore could have easily gotten lost. Fourth, Lepore received a high volume of mail at his house--another reason the letter could have gotten lost. Fifth, the son who received the Letter 1153 did not live in the house when he received it. He came to the house only occasionally, perhaps once or twice a week, to mow the lawn. He did not speak to his father frequently. Therefore, there was not a casual opportunity for Lepore's son to mention that a letter from the IRS had arrived. For these reasons we find that Lepore never saw the letter and that he was not otherwise notified of its arrival. We also conclude that he did not deliberately contrive to avoid its receipt. See id. at 318.

The IRS contends that Lepore should be considered to have received the Letter 1153 because his son received the letter at Lepore's house. Receipt of a document by another person in the addressee's house is sufficient in other contexts. For example, the Federal Rules of Civil Procedure provide that a plaintiff filing a complaint in a U.S. District Court can validly serve the defendant

[*12] by "leaving a copy * * * at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there".  Fed. R. Civ. P. 4(e)(2)(B).  However, no similar rule has been set forth (in a regulation for example), as a construction of section 6330(c)(2)(B).  And apparently no court has adopted the theory of imputed receipt espoused by the IRS in the context of section 6330(c)(2)(B).[6]  The IRS contends that the merit of its theory is that "[r]equiring personal service of Letters 1153 would be costly, time consuming, and inefficient" and would "greatly impair the Service's ability to assess the trust fund recovery penalty against liable taxpayers."  But to make the notification required before assessing the trust fund recovery penalty, the IRS need only mail the Letter 1153 to the last known address of the person to be assessed.  Sec. 6672(b)(1), (4); Mason v. Commissioner, 132 T.C. at 322-323.  The IRS can assess the penalty without making personal service on the person.  Id.  The receipt requirement applies only to the letter's function to provide an opportunity to dispute the underlying liability, not its effectiveness as pre-assessment notice of the penalty.  The IRS's imputed-receipt theory (as articulated in this case) is

---

[6]In Bland v. Commissioner, T.C. Memo. 2012-84, slip op. at 18 n.105, the Court noted that the issues raised in that case did not require it to determine whether the acceptance of the Letter 1153 by the addressee's building receptionist constituted receipt by the addressee of the letter.

**[*13]** therefore not compelled by the need to facilitate the assessment of trust fund recovery penalties.

Under the particular circumstances of this case, we hold that Lepore did not receive the Letter 1153. Because he did not have a prior opportunity to dispute his liability for the section 6672 penalties, we will remand this case to the Appeals Office for further proceedings to consider whether he is liable for the trust fund recovery penalties sought to be collected by the notice of federal tax lien filing.

Arguments of the IRS not discussed here are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.