# United States Tax Court

T.C. Memo. 2022-11

SCOTT NICHOLAS SHADDIX,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 12683-20L.                    Filed February 28, 2022.

————

Scott Nicholas Shaddix, pro se.

*Michelle A. Monroy*, for respondent.

MEMORANDUM OPINION

LAUBER, *Judge*: In this collection due process (CDP) case petitioner seeks review pursuant to sections 6320(c) and 6330(d)(1) of the determination by the Internal Revenue Service (IRS or respondent) to uphold the filing of a notice of federal tax lien (NFTL) for tax years 2013–2016.[1] Respondent has filed a Motion to Dismiss for Lack of Jurisdiction as to tax years 2012 and 2017, which we will grant. Respondent has filed a Motion for Summary Judgment as to the remaining years, contending that there are no disputed issues of material fact and that his determination to sustain the collection action was proper as a matter of

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] law. We will deny that Motion and remand the case to the IRS Office of Appeals (Appeals) for a supplemental CDP hearing.[2]

*Background*

The following facts are based on the parties' pleadings and motion papers, including the accompanying declarations and exhibits. *See* Rule 121(b). They are stated solely for the purpose of deciding respondent's motions and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). We construe factual materials and inferences drawn from them in the light most favorable to petitioner, the nonmoving party. *See ibid.* Petitioner resided in California when he filed his Petition.

As of March 15, 2018, petitioner had unpaid tax liabilities of $39,198 for 2013–2016. For purposes of ruling on respondent's Motion for Summary Judgment, we assume that these liabilities were self-reported. Respondent attached to his motion account transcripts with entries for each year stating: "RETURN FILED & TAX ASSESSED." The transcripts have no indication that petitioner's returns were examined or that any additional tax was assessed after the returns were filed. The record includes no evidence that the IRS issued petitioner a notice of deficiency for any relevant year.

On March 27, 2018, in an effort to collect these liabilities, the IRS sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing, and he requested a CDP hearing. The IRS initially viewed his hearing request as untimely, but he was able to show that his request, sent via certified mail, was delayed due to U.S. Postal Service error. The IRS ultimately agreed to treat his hearing request as timely filed.

The case was assigned to a settlement officer (SO1) in Philadelphia, Pennsylvania. SO1 scheduled a telephone conference for October 31, 2018. She informed petitioner that, in order for her to consider a collection alternative, he would need to complete the relevant IRS forms and supply financial information.

Petitioner called in to the telephone conference as scheduled. SO1 began the conference by stating that she had reviewed internal IRS records and determined that the assessments for 2013–2016 were valid.

---

[2] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019).

**[\*3]** She also told petitioner that he was not entitled to challenge his underlying liability for any year at issue. Her determination that he could not challenge his underlying liabilities seems to have been based on her belief that petitioner's tax returns had been audited. She wrote in her notes: "He admits to participating in the audit but states he has more receipts to be considered. [Petitioner] states he does owe [some tax] but not the amount stated. SO provided Audit Recon process and address."[3]

Petitioner indicated that he wished the IRS to consider an offer-in-compromise (OIC) based on doubt as to collectibility. SO1 gave him an additional 14 days to supply Form 656, Offer in Compromise, which he submitted on November 9, 2018. He proposed a lump-sum offer of $4,400 to compromise his outstanding liabilities for 2013–2016 (the tax years listed on the NFTL) as well as 2017, which also had a balance due. His total liabilities for 2013–2017 were $54,365. Petitioner also submitted, as required, Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and Form 433-B, Collection Information Statement for Businesses. The Form 433-B included information about Sweetwater Holdings, Inc. (Sweetwater), an S corporation wholly owned by petitioner.

On March 13, 2019, petitioner's OIC was assigned for review to an offer specialist (OS), who was tasked with making a preliminary recommendation to Appeals regarding the offer. The OS investigated petitioner's finances and discovered that Sweetwater in 2017 had reported a net operating loss (NOL) of $713,378.

After receiving additional financial information from petitioner, the OS determined that the amount petitioner offered—$4,400—was sufficient given his current financial circumstances. However, she recommended that Appeals not accept his offer unless he signed a collateral agreement waiving his right to claim NOLs and unused investment credits related to Sweetwater. The OS accordingly sent petitioner, and asked that he execute, Form 2261-C, Collateral Agreement—Waiver of Net Operating Losses, Capital Losses, and Unused Investment Credits.

---

[3] "Audit recon," short for audit reconsideration, is a process used by the IRS to help taxpayers who disagree with the results of an audit or a substitute for return. Audit reconsideration is pursued separately from the CDP procedure. *See Spain v. Commissioner*, T.C. Memo. 2021-58, 121 T.C.M. (CCH) 1439, 1440 (citing *Durda v. Commissioner*, T.C. Memo. 2017-89, 113 T.C.M. (CCH) 1420, 1422 n.3). There is no evidence that petitioner pursued audit reconsideration, which is consistent with our inference, for purposes of ruling on respondent's Motion, that there was no prior audit.

[*4] The agreement recited that it was intended to supply "additional consideration for acceptance of [petitioner's] offer in compromise."

The first paragraph of the proposed collateral agreement stated that "any net operating losses sustained for the years 2013 to 2019, inclusive, shall not be claimed" as NOL deductions under section 172. The fifth paragraph, however, limited the extent of this waiver. It provided: "[T]he agreement amount paid under the terms of the offer in compromise [viz., $4,400] and the additional amounts of taxes paid as a result of the waiver of the losses and credits involved in this agreement shall not exceed an amount equivalent to the liability covered by the offer plus statutory additions that would become due in the absence of the compromise."

Taken together, these two paragraphs specified the amount of NOLs to be waived and the time when this waiver would affect petitioner's future tax returns. The NOLs to be waived would be limited to the 2013–2017 liabilities to be compromised, minus the $4,400 paid, plus statutory additions (i.e., interest and additions to tax) that would become due on the 2013–2017 liabilities if there were no compromise. And the waived NOLs would come at the front, rather than at the back, of the line. In other words petitioner would be required to pay future taxes in an amount corresponding to the waiver amount, and he would then be permitted to use the balance of his NOL carryforwards on subsequent tax returns.

Petitioner declined to sign the collateral agreement. The OS, in consultation with her manager, accordingly sent the case back to Appeals with a recommendation that Appeals reject the OIC. The case was reassigned to a new settlement officer (SO2), who confirmed that petitioner's most recent tax return (for 2018) showed an NOL carryforward of $734,428 passed through to him from Sweetwater. After discussing the matter with two examination specialists, SO2 concluded that a partial waiver of NOL carryforwards is permissible if the facts support that determination. *See Internal Revenue Manual* (IRM) 5.8.6.2.3(6) (Oct. 4, 2017). Because petitioner had no remaining basis in his Sweetwater stock, he could use no portion of the $734,428 NOL carryforward unless he injected additional capital into the company. And because petitioner's OIC was premised on his inability to pay any more than $4,400, SO2 regarded petitioner's ability to use the NOL as questionable.

SO2 sent petitioner a letter scheduling a telephone conference for December 17, 2019. The letter stated: "You may not dispute the liability

[*5] in your CDP hearing because." Then, in the space where one would have expected SO2 to explain why petitioner could not dispute his liability, the following typographical error or unfinished phrase appears: "[en."

During that telephone conference and in subsequent communications, petitioner did not object to waiver of NOLs in an amount equal to the liabilities being compromised (minus $4,400). But he objected to having the waiver extend to "statutory additions that would become due in the absence of the compromise." And he urged that the NOLs being waived should go to the back, rather than the front, of the line. In other words, he contended that he should be allowed to use his reduced NOL balance to begin offsetting his future tax liabilities immediately.

SO2 left petitioner a voice message on February 5, 2020, drawing his attention to paragraph 5 of the proposed collateral agreement and asking why this was not sufficient to address his concern. On February 14, 2020, petitioner replied with a voice message stating that "he would not sign the waiver even with the provisions listed." Because petitioner declined to execute the collateral agreement, SO2 decided to reject the OIC as not in the best interest of the Government. *See* IRM 5.8.6.2(6) (Oct. 4, 2017). SO2's manager approved that decision.

After delays related to COVID-19, the IRS issued petitioner, on September 22, 2020, a notice of determination sustaining the NFTL filing for 2013–2016. The notice recited Appeals' conclusion that petitioner's offer "was acceptable with the collateral agreement." But it continued: "Appeals asked you to review the agreement, especially item 5 which stated the amount of tax paid as a result of the waiver would not exceed an amount of the liability compromised along with statutory additions. You still refused to sign the agreement." Finally, despite SO1's notes recounting petitioner's assertions that (1) he owed some tax "but not the amount stated" and (2) he "ha[d] more receipts to be considered," the notice of determination asserted: "You did not dispute your liability."

Petitioner timely petitioned this Court for review. He disputed the rejection of his OIC, contending that SO2 should have limited the NOL waiver to the liabilities being compromised (less $4,400) and should have permitted him to begin claiming NOL carryforward deductions (as thus reduced) immediately. He urged that the collateral agreement upon which SO2 insisted was unfair, asserting that it "puts me in a worse position than I would be without it" by "requir[ing] me to

**[\*6]** immediately begin to pay additional [penalties and interest] that I would not otherwise owe."

On July 23, 2021, respondent filed a Motion to Dismiss for Lack of Jurisdiction as to 2012 and 2017, years that were not the subject of any collection action. Petitioner has conceded that we lack jurisdiction as to 2012 but opposes the Motion to Dismiss as to 2017. On August 5, 2021, respondent filed a Motion for Summary Judgment, to which petitioner replied.

*Discussion*

A. *Motion to Dismiss for Lack of Jurisdiction*

The Tax Court is a court of limited jurisdiction. *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). We may exercise jurisdiction only to the extent expressly provided by statute. § 7442; *Breman v. Commissioner*, 66 T.C. 61, 66 (1976). Jurisdiction must be shown affirmatively, and petitioner, as the party invoking the Court's jurisdiction, bears the burden of proving that the Court has jurisdiction. *See David Dung Le, M.D., Inc. v. Commissioner*, 114 T.C. 268, 270 (2000), *aff'd*, 22 F. App'x 837 (9th Cir. 2001).

Under section 6330(d)(1) we have jurisdiction to review collection action only with respect to tax liabilities for which the IRS issued a valid notice of determination. Petitioner has failed to show that the IRS issued him any notice that would give us jurisdiction over tax years 2012 and 2017. Respondent represents that no such notice has been issued.

Petitioner urges that we exempt tax year 2017 from the dismissal to ensure our ability to address his OIC, which proposed to compromise his 2017 liability as well as his liabilities for prior years. Our lack of jurisdiction over 2017 creates no impediment in that respect. In determining whether Appeals abused its discretion in rejecting the OIC, we would be authorized to consider "any relevant issue." *See* §§ 6320(c), 6330(c)(2)(A). We would thus evaluate Appeals' exercise of discretion by taking into account all the liabilities that were proposed to be compromised, even though we do not have jurisdiction to review collection action with respect to 2017 in particular. *See, e.g.*, *Orum v. Commissioner*, 123 T.C. 1 (2004) (reviewing an OIC that covered income tax liabilities for years within and outside of the Court's jurisdiction), *aff'd*, 412 F.3d 819 (7th Cir. 2005); *Dean v. Commissioner*, T.C. Memo. 2009-269, 98 T.C.M. (CCH) 488, 490–91. We will thus grant respondent's Motion to Dismiss as to both 2012 and 2017.

[*7] B.        *Motion for Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988).  Under Rule 121 the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp.*, 98 T.C. at 520.  In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party (here, petitioner).  *See Sundstrand Corp.*, 98 T.C. at 520.  Where the moving party makes and properly supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading," but rather must set forth specific facts, by affidavits or otherwise, "showing that there is a genuine dispute for trial."  *See* Rule 121(d); *see also Sundstrand Corp.*, 98 T.C. at 520.

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case.  But the general parameters of such review are marked out by our precedents.  Where the validity of a taxpayer's underlying tax liability is properly at issue, we review the IRS's determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000).  Where the taxpayer's underlying liability is not in dispute, we review the IRS decision for abuse of discretion only. *Goza*, 114 T.C. at 182.  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

Absent stipulation to the contrary, our decision in this case is appealable to the U.S. Court of Appeals for the Ninth Circuit.  *See* § 7482(b)(1) and (2).  That court has held that, where de novo review is not applicable, the scope of review in CDP cases is confined to the administrative record. *See Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009), *aff'g in part* T.C. Memo. 2006-166, *and aff'g in part, vacating in part* decisions in related cases.  In such cases, our review is limited to deciding whether the agency action is supported by the administrative record and is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Belair v. Commissioner*, 157 T.C. 10, 17 (2021) (quoting *Van Bemmelen v. Commissioner*, 155 T.C. 64, 79 (2020)).

[*8]    Respondent contends that petitioner's underlying tax liabilities are not at issue because he failed to challenge those liabilities during the CDP hearing.  Respondent accordingly urges that we review Appeals' determination for abuse of discretion and find that Appeals did not err in rejecting petitioner's OIC.

A taxpayer may challenge his underlying liability in a CDP case if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute" it. § 6330(c)(2)(B).  If these conditions are met, a taxpayer may challenge a liability that he reported on his own tax return (or that the IRS calculated on a substitute for return pursuant to section 6020(b)).  *See Montgomery v. Commissioner*, 122 T.C. 1, 9 (2004); Treas. Reg. § 301.6320-1(e)(1).

On the basis of the record now before us, we conclude that SO1 erred when she informed petitioner that he was not entitled to challenge his underlying tax liabilities.  Evidently believing that petitioner had participated in a prior IRS audit, SO1 referred him instead to audit reconsideration.  But in opposing summary judgment petitioner avers that he never "discussed anything about 'participating in the audit.'"  There is no indication in petitioner's account transcripts or elsewhere in the record (apart from the assertion in SO1's notes) that the IRS examined his 2013–2016 returns.  There is likewise no evidence that petitioner received a notice of deficiency for 2013–2016 or that he had any other opportunity (e.g., at a prior Appeals conference) to dispute those liabilities.  In short, SO1 appears to have given petitioner incorrect information, and SO2 appears to have perpetuated that error by reiterating SO1's conclusion and leaving unfinished the portion of his letter explaining why an underlying liability challenge was not possible.

We have previously held that, when an Appeals officer errs in refusing to consider a taxpayer's underlying liability challenge, that matter was properly at issue in the CDP hearing.  *Perkins v. Commissioner*, 129 T.C. 58, 67 (2007).  "Where a taxpayer is incorrectly advised at a CDP hearing that she had a prior opportunity to contest her underlying liability, we consider the underlying liability."  *Mason v. Commissioner*, 132 T.C. 301, 320 (2009).  Our review on that point would be de novo. *Id.* at 321; *Perkins*, 129 T.C. at 67.

The administrative record as it now exists does not support SO1's assertion that petitioner was not entitled to challenge his underlying tax liabilities or the assertion in the notice of determination that "You did

[*9] not dispute your liability." We will therefore deny respondent's Motion for Summary Judgment and remand the case to Appeals for a supplemental CDP hearing. *See Lepore v. Commissioner*, T.C. Memo. 2013-135, 105 T.C.M. (CCH) 1811, 1813 ("Because he did not have a prior opportunity to dispute his liability . . . , we will remand this case to the Appeals Office . . . .").

If Appeals concludes on remand that petitioner is not entitled to dispute his underlying liabilities for 2013–2016, it shall explain the factual and legal basis for that conclusion. If Appeals determines that petitioner is entitled to dispute these liabilities, it shall offer him the opportunity to submit relevant evidence and then resolve his underlying liability challenge. We do not reach at this time the question whether Appeals abused its discretion in declining to accept petitioner's OIC. In addition to presenting, at the supplemental hearing, appropriate evidence concerning his underlying tax liabilities, petitioner is free to resume negotiations concerning the terms that should properly be included in such an offer.

To implement the foregoing,

*An appropriate order will be issued.*